## George T. E. Stamets and John J. Ebdy *v.* Laura L. Deniston, Appellant.

*Principal and agent—Sale of real estate—Revocation of contract—Specific performance—Evidence—Parol evidence.*

A principal has a right to revoke an agency for the sale of land, although the contract of agency is on its face irrevocable; but when the agent has performed his part of the contract he has the right to enforce the performance of the provisions beneficial to himself.

A. having made a contract authorizing B. and D. to sell certain lots and, on their selling enough of the lots to realize to her $5,500, agreeing to convey to them the remainder thereof, they to have a year in which to perform their part of the agreement, she will not be compelled to convey lots to the persons to whom B. and D. agreed to sell, but when B. and D. have obtained customers for lots to the amount of $5,500 she cannot revoke the contract within a year so as to relieve her from making a conveyance of the remaining lots to B. and D., and they may resort to parol evidence, if necessary, to show what lots they sold, and, therefore, what lots should be conveyed to them.

Argued Oct. 30, 1899.    Appeal, No. 146, Oct. T., 1899, by defendant, from decree of C. P. No. 3, Allegheny Co., May T.,

1899, No. 276, on bill in equity.   Before GREEN, McCOLLUM, MITCHELL, FELL and BROWN, JJ.   Affirmed.

Bill in equity for a specific performance.   Before EVANS, J.

The facts appear by the opinion of the trial court which was as follows :

### OPINION OF THE COURT.

The plaintiffs, George T. E. Stamets and John J. Ebdy, allege in their bill of complaint filed in this case that the defendant, Laura L. Deniston, entered into a contract in writing with them on October 5, 1898, giving to the plaintiffs the sole and exclusive right to sell certain property of the defendant situate in the township of Braddock, now the borough of Swissvale, in the county of Allegheny and state of Pennsylvania; that on or about February 27, 1899, the defendant refused to carry out on her part the terms of the said agreement, and on March 2, 1899, through her attorney, formally repudiated the agreement; and they pray in general terms for a decree for the specific performance on the part of the defendant of that agreement.

The defendant alleges in answer to the bill of complaint of the plaintiffs that by a contemporaneous oral agreement the plaintiffs agreed to sell and dispose of the property described in the written agreement, within a period of three months, and that they failed to comply with said part of the agreement, and further that they failed to use due diligence in the sale of the property described.

### FINDINGS OF FACT.

On and prior to October 5, 1898, the defendant, Laura L. Deniston, was the owner of a certain tract of land situate in the township of Braddock, county of Allegheny and state of Pennsylvania, fully described in the bill in this case; on that date she entered into an agreement with the plaintiffs in writing, whereby she gave to them sole and exclusive right and privilege of selling the tract of land aforesaid, as follows :

### "COPY OF AGREEMENT.

" This agreement made this fifth day of October, 1898, by

and between Laura L. Deniston, of the town of Swissvale, county of Allegheny, and state of Pennsylvania, party of the first part, and George T. E. Stamets and John J. Ebdy, of the town of Braddock, county and state aforesaid. Witnesseth : that the said party of the first part doth hereby give unto the said George T. E. Stamets and John J. Ebdy, parties of the second part, the sole and exclusive right and privilege of selling all that certain tract or parcel of land situate in said township of Braddock, county and state aforesaid, and being purpart No. two (2) in the partition of the estate of Robert B. Deniston, as see proceedings in partition in the orphans' court of said county at No. 3, September term, 1894, partition docket, vol. 14, page 232, et seq., said right and privilege being given and granted upon the following terms and conditions, viz: the said parties of the second part are to have the said tract or parcel of land laid out into lots and plan of same made, which said plan, after being duly acknowledged by said party of the first part, is to be recorded in the recorder's office of said county ; no lot in said plan, nor any part of said tract, shall be sold for a less sum than would make the selling price of the whole tract less than six thousand dollars were the whole tract sold for the same price per its area, as the proportionate area of the lot or lots so sold ; upon any lot or lots being sold by said second parties for such price (or greater price) as aforesaid, then said party of the first part covenants and agrees to execute to the purchaser or purchasers thereof a good fee simple deed therefor; with general warranty, the purchase money for such lot or lots is to be applied to the payment of the mortgage upon said tract now held by Mrs. —— Hays for the real debt of twenty-one hundred dollars, until said mortgage with interest thereon is paid in full, and then the purchase money of all lots thereafter sold up to the sum of thirty-four hundred dollars is to be paid to said party of the first part, her heirs and assigns, and when enough lots have been sold, so that from the purchase money thereof the said mortgage debt of twenty-one hundred dollars has been paid, and said party of the first part has also been paid said additional sum of thirty-four hundred dollars, then the said party of the first part, her heirs and assigns, covenants and agrees and binds herself and them to execute to the said parties of the second part a good

fee simple deed of general warranty for the lots in the said tract then remaining unsold to their heirs and assigns. It is understood that any and all expenses of whatsoever kind and nature incurred, necessitated or occasioned in selling of said tract or any part of it, including also therein surveying, making plans, recording of same, drawing of deeds, recording of same, etc., shall be borne and paid by the parties of the second part, and that said sum of thirty-four hundred dollars shall be paid to said first party free and clear of all deductions or abatements whatsoever on account of said expense. It is furthermore mutually understood and agreed upon by and between all parties hereto, that the right and privilege hereby granted is to cease and terminate one year after date hereof, and that within said period of one year from this date said parties of the second part have not been able to have said mortgage paid off in full, and also to have paid to said party of the first part the aforesaid sum of thirty-four hundred dollars, then any and all rights, privileges or claims of said parties of the second part, of, over, in, into or out of said tract, or any part thereof, shall thereby at once cease and determine (said time being of the essence of this contract), and anything previously done hereunder shall go to and inure to the benefit of the party of the first part, her heirs and assigns, without any liability to compensate the said parties of the second part therefor.

" Witness our hands and seals this the fifth day of October, 1898.

" LAURA L. DENISTON,     [SEAL.]
" G. T. E. STAMETS,     [SEAL.]
" J. J. EBDY,     [SEAL.]

" Witnesses :

" G. W. WILLIAMS,

" T. MORGAN SILVEY."

At the time of the execution of the agreement the property was subject to a mortgage given by James Deniston to John Hays for the sum of $2,100. The plaintiffs plotted the land described in the agreement into twenty-two lots, and on or about February 25, 1899, had sold lot No. 22 to A. O. Stewart for $423 ; and between that date and a few days subsequent to March 3, 1899, sold lot No. 21 to J. D. Craft for $441 ; lot

No. 14 to D. S. Barry for $450; lots Nos. 1 to 11, inclusive, to Wilson & Learn, for $3,300, and lots Nos. 17 to 20, inclusive, to Charles T. Ebdy for $1,400, all these agreements of sale being oral agreements. Within a few days of the execution of the agreement, to wit: October 5, 1898, arrangements were made between the plaintiffs and James Hays, the mortgagee, by which the mortgagee agreed to accept $250 on the sale of each of the lots in the plan and release the lien of his mortgage from the lot so sold, and this agreement was renewed with his administrator some time during the winter of 1898 and 1899.

On February 27, 1899, the defendant executed a mortgage for $3,000 to Jessie A. Heasley, payable one year after date, and from the proceeds of that mortgage satisfied the Hays mortgage.

On or about February 25, 1899, the plaintiff Stamets requested the defendant to acknowledge, for the purpose of record, the plan of lots prepared by Edeburn and Cooper for plaintiffs, in order that the same might be placed of record, which request she refused, stating that she was about to place another mortgage on the property and would not sell it for a year; and subsequently, on March 5, 1899, she formally repudiated the contract of October 5, 1898, and refused to carry out the same on her part.

In the latter part of January, 1899, the plaintiffs received an offer for the lots Nos. 1 to 11, inclusive, from one W. S. Robinson, for the price of $3,450, which price, after consultation with the defendant, Mrs. Deniston, was accepted orally, and the said plaintiffs refused to execute an agreement in writing for the sale of said lots, giving to the purchaser ten days in which to pay the money and receive his deeds, for the reason that the said Robinson refused to pay any hand money, and that the agreement provided for the conveyance of lots 120 feet deep, whereas the lots in the plan were 110 feet deep.

Arrangements have been made between the plaintiffs and Jessie A. Heasley, by which the latter agrees to satisfy her mortgage on the premises described on the payment of the face of the mortgage and one year's interest.

The sale to Wilson & Learn of lots Nos. 1 to 11, inclusive, was made after March 5, 1899.

CONCLUSIONS OF LAW.

By the terms of the article of agreement of October 5, 1898, the defendant binds herself to convey the remainder of the land described in the article of agreement to the plaintiffs on their performance of their part of the agreement, to wit: the sale of a sufficient number of lots to realize to her the sum of $5,500, and gives to the plaintiffs one year in which to perform their part of the agreement. This agreement, so far as the parties thereto are concerned, was for a consideration, and was irrevocable until after the expiration of the year.

The prayer in the bill for a decree directing the defendant to acknowledge and deliver deeds in fee simple to A. O. Stewart for lot No. 22, to D. S. Barry for lot No. 14, to J. D. Craft for lot No. 21, to Wilson & Learn for lots Nos. 1 to 11, inclusive, cannot be entered for the reason that as between the defendant and the proposed purchasers of the lots, she could rescind the power of sale given to the plaintiffs at any time, and there are no agreements in writing between her and her agents and the purchasers, on which a decree could be based. The case of Blackstone v. Buttermore, 53 Pa. 266, rules the question as to the power of a principal to revoke an agency for the sale of real estate at any time, which by its terms was irrevocable; but this does not affect the rights of the agents, the plaintiffs in this case, to enforce performance upon the part of their principal, the defendant, when they had performed their part of the contract.

The land to be conveyed to the plaintiffs by the defendant is sufficiently designated in the agreement in writing to enable a chancellor to decree the execution of a deed therefor. By the terms of the agreement the land described in the agreement is to be divided into lots, and a plan thereof made, which was done, and the plan offered in evidence in the case. The agents, the plaintiffs in this case, were directed to sell a sufficient number of these lots to realize the sum of $5,500, and the defendant agreed to convey the remainder of the lots to the plaintiffs. It may always be shown by parol that the plaintiffs in a bill for specific performance of the conveyance of real estate has performed his part of the agreement; for instance, if the consideration of the sale were the payment of money, the tender of the money could be shown by parol; and in this case, where

the consideration for the conveyance of the land was the procuring of purchasers for a sufficient number of lots to aggregate the purchase price of $5,500, it is competent to show by parol that the plaintiffs did so procure purchasers for certain lots at prices which aggregated $5,500 or more. That being shown, the agreement itself clearly points out what land remains, and the plaintiffs are not compelled to resort to parol testimony to show it; in other words, the agreement points out the method by which the land to be conveyed to the plaintiffs can be ascertained and described; and our courts have always held, under such circumstances, that parol evidence may be admitted to so describe the land. This was clearly ruled in Peart v. Brice, 152 Pa. 277. The contract on the part of the plaintiffs is executed, and it does not matter, for the purposes of this case, if the contract in its inception was such that the defendant could not have enforced specific performance from the plaintiffs.

The plaintiffs used ordinary care and diligence in procuring the sales of this real estate, and the fact that they procured the assistance of other real estate agents to help them in finding purchasers cannot have worked any injury to the defendant, but was rather an advantage to her in expediting the sale of her property.

The court decrees: That the defendant, Laura L. Deniston, properly acknowledge the plan of lots offered in evidence in this case for the purpose of record in the recorder's office, of Allegheny county; and further that the said defendant, Laura L. Deniston, make, acknowledge and deliver to the plaintiffs, George T. E. Stamets and John J. Ebdy, as tenants in common, a deed in fee simple, free from all incumbrances, for lots Nos. 12, 13, 15 and 16 in the said plan, the costs to be paid by the defendant.

*Error assigned* was the decree of the court.

*G. W. Williams*, with him *N. S. Williams* and *Albert J. Edwards*, for appellant.—A power coupled with an interest means the coexistence of the two, and the interest must begin at the same time or prior to the creation of the power. If the power must be exhausted before the interest begins, then the agency is not a power coupled with an interest: Minor's App., 53 Pa.

214; Blackstone v. Buttermore, 53 Pa. 266; Coffin v. Landis, 46 Pa. 426; Lightner's App., 82 Pa. 301; Story on Agency, secs. 164, 173.

As authorities on lack of mutuality, we cite Bodine v. Glading, 21 Pa. 50, Meason v. Kaine, 63 Pa. 335, Ballou v. March, 133 Pa. 64, Waterman on Specific Performance, sec. 199, and Cooper v. Pena, 21 Cal. 404.

*William H. Sponsler*, for appellees.—The covenants upon the part of the appellees were completely performed and executed before bill brought: Welch v. Whelpley, 62 Mich. 15; 2 Beach's Modern Equity Jurisprudence, sec. 587 ; Brown v. Munger, 42 Minn. 482; Allen v. Cerro Gordo County, 40 Iowa, 349.

PER CURIAM, November 6, 1899 :

The findings of fact and conclusions of law contained in the opinion of the learned court below are so entirely correct and so well expressed that we do not see how we can add anything of importance to them, and we therefore affirm the decree on the opinion.